UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN S. WOLLNER, | 26-CV-3207 (AT) (RFT) |
| Plaintiff, | |
| -against- | **ORDER** |
| PEARPOP INC., et al., | |
| Defendants. | |

**ROBYN F. TARNOFSKY, United States Magistrate Judge:**

Pending before the Court is Plaintiff's letter-motion to file certain exhibits to the operative complaint under seal, on the ground that the exhibits contain proprietary business information, trade secrets, and personal identifying information, and that the documents are themselves trade secrets. (*See* ECF 10, Pl.'s Letter-Mot. at 2.) The letter-motion is granted in part and denied in part, as set forth below.

## Legal Principles

There is a presumption of public access to judicial documents, and the Court must find that the presumption has been overcome before sealing a document. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).[1] The Second Circuit has set out a three-step test for determining whether the presumption of public access has been overcome: first, the Court determines whether the documents are "judicial documents" that are "useful in the judicial process"; if the documents are judicial documents, the Court then determines the

---

[1] This order omits internal quotation marks, citations, and alterations from quoted text.

"weight" of the presumption of public access; and finally, the Court must "balance competing considerations against [the presumption of access]," including "privacy interests of those resisting disclosure." *Id.* (citing *United States v. Amodeo,* 71 F.3d 1044, 1049-50 (2d Cir. 1995)).

Any sealing order must be "narrowly tailored" to preserve privacy and competitive concerns; parties may be required to file documents with narrowly tailored redactions. *Lugosch*, 435 F.3d at 124; *see also Great W. Ins. Co. v. Graham,* No. 18-CV-6249 (VSB), 2021 WL 5325924, at *2 (S.D.N.Y. Nov. 15, 2021); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-CV-0307 (AKH), 2019 WL 11863704, at *1 (S.D.N.Y. Mar. 25, 2019).

1.      Protecting Confidential Business Information and Trade Secrets

Courts may deny public access to records that "contain[ ] sensitive and proprietary information that is not generally publicly available and that, if revealed, could cause significant competitive harm." *Awestruck Mktg. Grp., LLC v. Black Ops Prods., LLC,* No. 16-CV-3639 (RJS), 2016 WL 8814349, at *2 (S.D.N.Y. June 20, 2016); *see also In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009) ("Notwithstanding the presumption of public access to judicial records, courts may deny access to records that are sources of business information that might harm a litigant's competitive standing")); *EFCG, Inc. v. AEC Advisors, LLC*, No. 19-CV 8076 (RA) (BCM), 2020 WL 7121855, at *1 (S.D.N.Y. Nov. 9, 2020) (granting the plaintiff's request to seal an order containing "confidential, commercially sensitive information which might harm [the plaintiff's] competitive standing vis-à-vis defendants and other competitors"); *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-0740 (JMF), 2017 WL 5151357, at *2 (S.D.N.Y. Nov. 3, 2017) (sealing internal insurance company records that affected ongoing operations of the business).

Courts in this Circuit have noted that although "a business's information need not be a true trade secret in order to warrant protection from disclosure," trade secret law "is instructive in gauging whether information constitutes sensitive business information that courts should shield from public scrutiny." *In re Parmalat*, 258 F.R.D. at 244; *see SEC v. TheStreet.com*, 273 F.3d 222, 231 n.10 (2d Cir. 2001) (identifying trade secrets as a type of information entitled to protection). Courts typically apply six factors when determining the existence of a trade secret: (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *In re Parmalat*, 258 F.R.D. at 245.

Courts have found documents such as client or customer lists to warrant trade secret protection. *See, e.g., N. Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 46 (2d Cir. 1999) (collecting cases). Operating agreements and other "confidential foundational agreements" may also contain business secrets or implicate the privacy interests of the partnerships' principals. *See Carbon Inv. Partners, LLC v. Bressler,* No. 20-CV-3617 (ER), 2020 WL 5441497, at *3-*4 (S.D.N.Y. Sept. 10, 2020) (finding that "confidential foundational agreements of governing documents," including confidentiality agreements and operating agreements, warrant sealing because they contain business secrets and their disclosure could potentially harm future negotiations).

However, to warrant sealing, such agreements need to be currently applicable to the present business; additionally, the party seeking to seal such agreements must show, beyond vague or general assertions, that competitive harm will result from disclosure. *See Lively v. Wayfarer Studios LLC*, No. 24-CV-10049 (LJL), 2026 WL 145483, at *6 (S.D.N.Y. Jan. 20, 2026) (denying a motion to seal an operating agreement that had subsequently been amended twice because the defendant had not demonstrated that the agreement was still applicable to the business and made only general assertions regarding potential competitive harm, and where the plaintiff's "ownership interest" or "entitlement to distributions from the business [were] directly at issue"); *see also  Zesty Paws LLC v. Nutramax Laby's, Inc.*, No. 23-CV-10849 (LGS), 2024 WL 3330709, at *2 (S.D.N.Y. June 24, 2024) ("Vague and unspecified business concerns, like confidential and related business interactions that could be used by corporate competitors in a detrimental manner, are broad, general, and conclusory allegations insufficient to justify sealing.").

2.    Protecting Personal Identifying Information

Federal Rule of Civil Procedure 5.2(a) lists the permissible redactions for filings containing certain personal identifying information, such as "an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number." Fed. R. Civ. P. 5.2(a). Courts routinely allow parties to file redacted versions of documents to  protect personal identifying information. *See, e.g., Averbach v. Cariso Amman Bank,* No. 19-CV-0004 (GHW) (KHP), 2023 WL 4144758, at *3, *5 (S.D.N.Y. June 23, 2023) (noting that Courts in this District have recognized a privacy interest for certain banking information such as account numbers, social security numbers, and security

4

questions, and permitting limited redactions of such numbers and similar identifying information that could pose a safety issue to customers); *Am. Realty Cap. Props. Litig.*, No. 15-CV-0307 (AKH), 2019 WL 11863704, at *1 (S.D.N.Y. Mar. 25, 2019) (granting a motion to seal in part to protect certain documents that contained personal identifying information about individuals and allowing the parties to re-file such documents with narrowly tailored redactions to protect the privacy interests of those individuals).

### **Analysis**

Plaintiff seeks to file under seal the following four exhibits to the complaint: Exhibit A, the Confidentiality and Non-Circumvent Agreement between Loxodonta Equities LLC/Ryan Wollner and Cole Mason/Cole Mason Enterprises LLC, dated March 26, 2020 ("Mason CNCA"); Exhibit D, the Operating Agreement of PearPop LLC, effective April 30, 2020 ("Operating Agreement"); Exhibit E, the Confidentiality and Non-Circumvent Agreement between Loxodonta Equities LLC/Ryan Wollner and Spencer Markel, executed May 2020 ("Markel CNCA"); and Exhibit F, the Confidentiality Agreement between PearPop LLC and Spencer Markel, executed May 2020 ("PearPop-Markel CA").[2] Plaintiff seeks to seal all four exhibits on the ground that they contain and constitute, as he argues, trade secret information; Plaintiff also seeks to seal the Operating Agreement on the ground that it contains personal identifying information that is

---

[2]   Although Plaintiff says that the Markel CNCA (Ex. E) was executed in May 2020, the document appears to be an unexecuted draft. (*See* Ex. E, Markel CNCA at 1, 5.) The Pearpop-Markel CA (Ex. F) is fully executed and is substantially similar to the Markel CNCA. (*See* Ex. F, Pearpop-Markel CA at 1, 5.) The only difference between the two agreements is that the Markel CNCA contains a condition of non-circumvention clause (Markel CNCA ¶ 6) and an acknowledgements clause (Markel CNCA ¶ 8) while the Pearpop-Markel CA does not. (*Compare* Ex. E, Markel CNCA *with* Ex. F, Pearpop-Markel CA.)

subject to redaction under Rule 5.2. (*See* ECF 10, Pl.'s Letter-Mot. at 2-4.) I have reviewed the

documents and conclude that, for the reasons set out below, the Operating Agreement should

be sealed and filed on the docket with personal identifying information redacted.

1.    <u>Judicial Documents and the Weight of the Presumption of Public Access</u>

All pleadings, including attachments to a complaint, are judicial documents that are

entitled to a presumption of public access. *See Bernstein v. Bernstein Litowitz Berger &*

*Grossman LLP,* 814 F.3d 132, 139-40 (2d Cir. 2016) (all pleadings "are judicial records subject to a

presumption of public access"); *Flores v. Gonzalez*, No. 23-CV-4490 (LTS), 2025 WL 2613030, at

*1 (S.D.N.Y. Aug. 13, 2025) (same). The documents Plaintiff seeks to submit under seal are

judicial documents entitled to a presumption of public access.

The presumption of public access for the documents at issue here is "strong, because

the complaint is highly relevant to the exercise of Article III judicial power and the complaint

invokes the powers of the court, states the causes of action, and prays for relief." *Slice Ins.*

*Techs., Inc. v. Appalachian Underwriters, Inc.*, No. 24-CV-9803 (LGS), 2025 WL 3677802, at *2

(S.D.N.Y. Dec. 18, 2025). In particular, the complaint alleges a claim for breach of the Operating

Agreement (Ex. A) and references specific sections of the Operating Agreement throughout.

(*See, e.g.,* ECF 1, Compl. at 15 (referencing §§ 1.3, 8.8, 9.3, 13.2(h), 19.1 and 21.6 of the

Operating Agreement), 16 (listing Plaintiff's 5% equity interest and founder contributions), 17

(quoting § 29 of the Operating Agreement), 23 (discussing §§ 1.3, 9.3, and 26.7 of the Operating

Agreement), 26 (quoting the requirements listed in §§ 7.12, 7.13(a), and 7.14 of the Operating

Agreement), 29 (quoting § 20 of the Operating Agreement); 27 (describing Plaintiff's actions

under §§ 11, 21.6, and 22 of the Operating Agreement), 39 (quoting Plaintiff's rights under

6

§ 11(a) of the Operating Agreement).)[3] The complaint also bases at least two of claims on a breach of the Markel CNCA. (*See, e.g.,* ECF 1, Compl. at 4-9, 11, 13-15, 20, 49, 52-57.)  As such, the Markel CNCA (Ex. E) and the Pearpop-Markel CNCA (Ex. F) are directly at issue.

2.    Balancing the Presumption of Public Access
       Against the Protection of Confidential Business Information and Trade Secrets

As to the three confidentiality agreements, the documents do not contain proprietary or confidential business information or constitute trade secrets in and of themselves. Rather, they are standard confidentiality agreements that lay out the terms and restrictions on disclosure of confidential information, what information will be deemed trade secrets, who owns such information, and the rights each party has related to the violation of the agreements, without specifying any particular confidential or proprietary information.

The Mason CNCA (Ex. A) does contain an "Entity" list mentioning an entity that Plaintiff had a relationship with at the time of execution. However, that entity and its owner –Rocket One and Michael Shvartsman – are directly referenced in the complaint other documents incorporated by reference in the complaint. (*See, e.g.,* ECF 1, Compl. at 5, 14-17, 21-28, 32, 34, 38-39; Ex. L, DLA Piper Fourth Production Cover Letter; Ex. P, Advancement Refusal Email Chain; Ex. S, DLA Piper Settlement Communication.) Thus, this entity and its relationship have already been made public, which makes sealing unwarranted. *See Grossberg v. Fox Corp.,* No. 23-CV-2368 (JMF), 2023 WL 2612262, at *1 (S.D.N.Y. Mar. 23, 2023) ("[C]ourts routinely deny sealing requests where, as here, the information to be sealed is already publicly available.");

*Chigirinskiy v. Panchenkova*, 319 F. Supp. 3d 718, 739 (S.D.N.Y. 2018) (denying a motion to seal

---

[3]     The numbered paragraphs in the complaint restart at 1 with each section. Accordingly, all citations to the complaint reference page rather than paragraph numbers.

where the information the parties sought to seal was included in the complaint, second amended complaint, and the answer, all of which were unsealed and on the public docket). "The Court has no ability to make private that which has already become public," for "[o]nce the genie is out of the bottle, a court does not have the means to put the genie back." *Grossberg,* 2023 WL 2612262, at *1 (citing *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 144 (2d Cir. 2004)).

As to the Operating Agreement (Ex. D), it sets forth the rules by which Pearpop LLC operates, the relationships between its members, and the investments made by the members; as such, it constitutes a "foundational agreement[ ] of governing" Pearpop LLC. *Carbon Inv. Partners*, 2020 WL 5441497, at *3. But Plaintiff provides only general assertions that the Operating Agreement itself is a trade secret and that its disclosure would harm the company's and its members' legitimate business interests. (*See* ECF 10, Pl.'s Letter-Mot. at 3.) Such generalized assertions are insufficient to warrant sealing the Operating Agreement. *See Lively*, 2026 WL 145483, at *6; *Zesty Paws LLC*, 2024 WL 3330709, at *2.

3.      Balancing the Presumption of Public Access
        Against the Protection of Personal Identifying Information

Plaintiff has identified certain personal identifying information in Exhibit D, the Operating Agreement, that should not be disclosed on the public docket. (*See* ECF 10, Pl.'s Letter-Mot. at 3 (indicating that "[t]he Operating Agreement also contains personal identifying and financial information protected under Federal Rule of Civil Procedure 5.2).)

While Rule 5.2(a) permits the redaction of certain personal identifying information, the documents need not be sealed in their entirety to protect such personal identifying information. Applying narrowly tailored redactions to the Exhibits at issue can achieve this goal. *See Great W.*

*Ins.,* 2021 WL 5325924, at *2 (S.D.N.Y. Nov. 15, 2021)*; In re Am. Realty Cap. Props. Litig.*, 2019 WL 11863704, at *1 (granting motion to seal in part and allowing the parties to re-file documents with narrowly tailored redactions to protect personal identifying information).

### **Conclusion**

Plaintiff is ORDERED by **May 20, 2026** to serve a copy of this order on Defendants and to file proof of such service on the docket by **May 22, 2026**. Plaintiff is further ORDERED by **May 20, 2026** to file on the docket Exhibit D with appropriate redactions of personal identifying information; and to file on the docket Exhibits A, E, and F.

DATED:  May 18, 2026          SO ORDERED.
        New York, NY

**ROBYN F. TARNOFSKY**
**United States Magistrate Judge**